IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WINSTON COSTALES, | ) | CIV. NO.  12-00171 JMS/RLP |
| | ) | |
| Plaintiff, | ) | ORDER (1) GRANTING IN PART |
| | ) | AND DENYING IN PART |
| vs. | ) | DEFENDANT CITY AND COUNTY |
| | ) | OF HONOLULU POLICE |
| CITY AND COUNTY OF | ) | DEPARTMENT'S MOTION TO |
| HONOLULU, a Municipal | ) | DISMISS FIRST AMENDED |
| Corporation, LOUIS KEALOHA; | ) | COMPLAINT; AND (2) GRANTING IN |
| HENRY CHEUNG; MALCOLM | ) | PART AND DENYING IN PART |
| UEHARA; SHERI K. NAKASONE; | ) | DEFENDANTS MALCOLM UEHARA |
| BLAKE E. HOTTENDORF; ROEL | ) | AND TERRY T. MURAKAMI'S |
| C. GAUPSAN; TERRY T. | ) | MOTION TO DISMISS FIRST |
| MURAKAMI; PATRICE | ) | AMENDED COMPLAINT |
| GIONSON, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANT
CITY AND COUNTY OF HONOLULU POLICE DEPARTMENT'S
MOTION TO DISMISS FIRST AMENDED COMPLAINT; AND
(2) GRANTING IN PART AND DENYING IN PART DEFENDANTS
MALCOLM UEHARA AND TERRY T. MURAKAMI'S MOTION TO
DISMISS FIRST AMENDED COMPLAINT**

## I. INTRODUCTION

Plaintiff Winston Costales ("Plaintiff") asserts that Defendants City

and County of Honolulu (the "County"), Honolulu Police Department ("HPD")

Chief Louis Kealoha, and HPD Officers Henry Cheung, Malcolm Uehara, Sheri

Nakasone, Blake Hottendorf, Roel Gaupsan, Terry Murakami, and Patrice Gionson

(collectively, "Defendants") violated his civil rights and committed state law torts when he was arrested on April 1, 2010.

Currently before the court is (1) the County's Motion to Dismiss; and (2) Officers Uehara and Murakami's ("Moving Officers") Motion to Dismiss.[1] Both Motions argue that certain claims in the First Amended Complaint ("FAC") lack a legally cognizable basis, and that other claims are pled in such conclusory fashion that they fail to state a plausible claim for relief.  At the October 9, 2012 hearing, the parties agreed that even though not all Defendants have been served, it would be in the interest of justice for the court to address the arguments as applied to all Defendants.  Based on the following, the court GRANTS in part and DENIES in part the Motions to Dismiss as to all Defendants.

## II.  BACKGROUND

### A.    Factual Background

As alleged in the FAC, on April 1, 2010 at approximately 2:20 a.m., Officer Nakasone pulled Plaintiff over on the H-1 freeway after observing him speeding, weaving, and passing vehicles on the right.  Doc. No. 6, FAC ¶¶ 16-22. Officer Nakasone claimed to smell alcohol on Plaintiff's breath, resulting in

---

[1]  The court GRANTS Chief Kealoha's Motion for Joinder in the Motions to Dismiss. *See* Doc. No. 30.

administration of a field sobriety test and a Preliminary Alcohol Screening, both of which Officer Nakasone determined Plaintiff failed. *Id.* ¶¶ 25-31. Officer Nakasone further discovered that Plaintiff had an outstanding traffic warrant in the amount of $500.00. *Id.* ¶ 32.

By this time, Officers Uehara, Murakami, and Gaupsan were providing back-up to Officer Nakasone. *Id.* ¶ 23. With the assistance of Officers Gaupsan and Murakami and the concurrence of Officer Uehara, Officer Nakasone placed Plaintiff under arrest for operating his vehicle under the influence of an intoxicant, driving with a suspended license, reckless driving, and for the outstanding traffic warrant. *Id.* ¶ 33. Officer Nakasone informed Plaintiff of the reasons for his arrest and then placed him in handcuffs with the assistance of Officers Murakami and Gaupsan. *Id.* ¶ 34. In the course of taking Plaintiff to Officer Nakasone's vehicle, Officers Gaupsan and Murakami forced Plaintiff to the ground face-first so that Officer Murakami could place leg shackles on him. *Id.* ¶¶ 36-37. The FAC asserts that Officers Gaupsan and Murakami, with the concurrence of Officers Uehara and Nakasone, "used a degree of force on the Plaintiff that was unnecessary and unreasonable, and that the degree of force resulted in causing cuts and abrasions thereby causing injury to the Plaintiff." *Id.* ¶ 38.

The officers subsequently took Plaintiff to the HPD Wahiawa police substation, where they were met by Officers Hottendorf, Cheung, and Gionson. Officers Murakami and Hottendorf took Plaintiff inside the station to be processed and removed his handcuffs and leg restraints. *Id.* ¶¶ 44, 46. Reports created by Officers Nakasone, Gaupsan, Murakami, and Hottendorf assert that at this time, Plaintiff was using foul language towards the officers. *Id.* ¶ 45. Reports further assert that Plaintiff got up from his seat and confronted Officer Hottendorf, who placed his hands on Plaintiff's shoulders. *Id.* ¶ 47. These reports recite that Plaintiff lost his balance and fell face-first onto a table, causing Plaintiff to suffer a bloody nose. *Id.* ¶ 48. According to the FAC, however, Officer Hottendorf in reality struck Plaintiff, causing a fracture of the orbit of one of Plaintiff's eyes. *Id.* ¶ 49. The FAC further asserts that Plaintiff was assaulted by Officers Gaupsan, Murakami, and other unknown officers. *Id.* ¶ 50.

According to the FAC, Officers Gionson and Cheung, the senior officers responsible for overseeing the conduct of officers regarding arrests and reports, were aware of Officers Gaupsan's, Murakami's, and Hottendorf's treatment of Plaintiff, and that Officers Cheung, Uehara, Gionson, and Nakasone were either present during the assault or were made aware of the assault by Officers Gaupsan, Murakami, and Hottendorf. *Id.* ¶¶ 53-54. The FAC further

4

asserts that these Officers either generated and/or approved false reports stating that Plaintiff was uninjured and/or that the injuries were caused by Plaintiff's own wrongdoing. *Id.* ¶ 55.

## B.     Procedural Background

Plaintiff filed this action on March 28, 2012, and the FAC asserts claims for (1) violation of Plaintiff's First, Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendment rights (Count I); (2) conspiracy to violate Plaintiff's civil rights (Count II); (3) assault and battery (Count III); (4) gross negligence and negligence (Count IV); (5) intentional/negligence infliction of emotional distress (IIED/NIED) (Count V); and (6) false imprisonment (Count VI).

The County filed its Motion to Dismiss on July 19, 2012, and Moving Officers filed their Motion to Dismiss on August 2, 2012.  Plaintiff filed an Opposition on September 19, 2012, and Defendants filed a Reply on September 25, 2012.  A hearing was held on October 9, 2012.

## III.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008).  This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.").

Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  In other words, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  *Starr*, 652 F.3d at 1216.  Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader

is entitled to relief as required by Rule 8.  *Iqbal*, 556 U.S. at 679.

# IV.  ANALYSIS

Defendants argue that the FAC fails to state a plausible claim for relief.  In opposition, Plaintiff concedes that his claims for violations of his Fifth, Sixth, Eighth, and Ninth Amendment rights, as well as his false imprisonment claim, all fail as a matter of law.  Plaintiff also concedes that his conspiracy claim is inadequately pled and instead seeks leave to amend.  *See* Doc. No. 26, Pl.'s Opp'n at 12.  In light of these concessions, the court GRANTS the Motions to Dismiss as to these claims as to all Defendants.  The court now turns to the claims in dispute.

## A.    Claims Pursuant to 42 U.S.C. § 1983 (Count I)

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  Defendants argue that the FAC fails to allege sufficient facts to state a plausible constitutional violation, and that the FAC further fails to state a cognizable basis for County liability.  The court first addresses the individual constitutional violations, and then turns to the issue of County liability.

### 1.    First Amendment

In order to state a claim based upon a First Amendment violation, a plaintiff must allege facts establishing that: (1) the plaintiff engaged in speech or conduct protected under the First Amendment; (2) the defendant took action against the plaintiff; and (3) the plaintiff's protected speech or conduct or the chilling of the plaintiff's speech or conduct was a substantial motivating factor for the defendant's actions.  *See Menotti v. City of Seattle*, 409 F.3d 1113, 1155 (9th Cir. 2005) (articulating the general elements of a First Amendment claim); *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1071 (9th Cir. 2004) (applying the elements articulated as pleading requirements).

Although the FAC asserts in summary fashion that Plaintiff's First Amendment rights were violated when Officer Defendants "arrest[ed] the Plaintiff while he was engaged in speech that was Constitutionally protected," Doc. No. 6, FAC ¶ 59(a), this assertion is merely a legal conclusion and the FAC fails to assert sufficient factual allegations suggesting that this is indeed the case.  The *only* speech referenced in the FAC is that police reports state that Plaintiff used foul language towards the officers at the Wahiawa station.  *Id.* ¶ 45.  This speech occurred *after* his arrest, and in any event foul language is generally not afforded First Amendment protection.  *See, e.g.*, *Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (holding that prisoner's act of calling hearing officer a "foul and

corrupted bitch" not protected speech); *Smith v. Mosley*, 532 F.3d 1270, 1277 (11th Cir. 2008) (explaining that prisoner's "false and insubordinate remarks" were not protected speech). Further, although the FAC asserts that Officer Hottendorf assaulted Plaintiff, the FAC includes no allegations suggesting that Plaintiff's speech was a motivating factor in that contact. The court therefore GRANTS the Motions to Dismiss as to Plaintiff's First Amendment claim, with leave to amend.

### 2.    *Fourth Amendment*

The Fourth Amendment prohibits the use of "excessive force" arising in the context of an arrest or investigatory stop. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). Fourth Amendment excessive force claims are evaluated with a "reasonableness" standard, in which the "nature and quality of the intrusion on the individual's Fourth Amendment interests" must be balanced "against the countervailing governmental interests at stake." *Id*. at 396. To state a claim for excessive force, a plaintiff must allege facts to support that an official used or caused to be used objectively unreasonable force against him. *See Brosseau v. Haugen*, 543 U.S. 194, 197 (2004).

The FAC asserts that Officer Hottendorf used excessive force against Plaintiff at the Wahiawa station. Specifically, the FAC asserts that Officer Hottendorf struck Plaintiff, causing him to fracture the orbit of one of his eyes.

*Id.* ¶ 49.  *Id.* ¶ 50.  This allegation is sufficient to state a Fourth Amendment claim against Officer Hottendorf.

At the October 9, 2012 hearing, Plaintiff's counsel asserted that he is not presently asserting a Fourth Amendment claim against any of the other officers.[2]  As a result, the court DENIES the Motion to Dismiss the § 1983 claim based on excessive force as to Officer Hottendorf, and GRANTS the Motion to Dismiss as to all other Officers, with leave to amend.[3]

### 3.    *Claims Against the County*

For the County to be liable under § 1983, Plaintiff must establish that an HPD policy, custom, or practice was the "moving force" behind the alleged violation of his constitutional rights.  *Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658, 694 (1978).  The failure to properly train police officers may be a policy for which the County is liable under § 1983 if "the need for more

---

[2]  The court recognizes that the FAC asserts that during the traffic stop, Officers Gaupsan and Murakami forced Plaintiff to the ground face-first with a "degree of force on the Plaintiff that was unnecessary and unreasonable, and that the degree of force resulted in causing cuts and abrasions thereby causing injury to the Plaintiff."  Doc. No. 6, FAC ¶¶ 36-38.  The FAC also asserts in conclusory fashion that Officers Gaupsan and Murakami "assaulted" Plaintiff.  *Id.* ¶ 50. At the October 9, 2012 hearing, however, Plaintiff's counsel represented that he was not asserting stand-alone claims based on the Officers' conduct at the scene of the arrest, but that the Fourth Amendment claim is based on Officer Hottendorf's conduct.

[3]  Defendants further argue that this claim fails to the extent it is based on negligence. *See* Doc. No. 16, Moving Officers' Mot. at 9.  Because Plaintiff clarifies in his Opposition that his § 1983 claims are not based on negligence, *see* Doc. No. 26, Pl.'s Opp'n at 11, the court need not address this argument.

or different training [was] so obvious" that a violation of constitutional rights was likely to result from the lack of training and thus the County's policy was "deliberately indifferent to the need [for training]."  *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).  Similarly, the failure to properly supervise police officers may be a policy for which a county is liable under § 1983 if the "supervision is sufficiently inadequate as to constitute 'deliberate indifference' to the rights of persons with whom the police come into contact."  *Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989) (quoting *City of Canton*, 489 U.S. at 389).

Plaintiff, however, must show more than "mere negligence" in police training or supervision.  *Id*. (citing *Daniels v. Williams*, 474 U.S. 327, 328 (1986)). In other words, for the County to be liable under § 1983, Plaintiff must establish that: (1) he was deprived of a constitutional right that he possesses; (2) the HPD had a policy, custom, or practice; (3) this policy, custom, or practice amounts to deliberate indifference to his constitutional right; and (4) the policy, custom, or practice was the moving force behind the alleged constitutional violation.  *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997).

The FAC asserts that the County is liable for the constitutional violations of the officers by:

      a.     Failing to supervise properly the training and conduct of Defendant Police Officers;

11

      b.     Failing to enforce the laws of the State of Hawaii, and the City and County of Honolulu;

      c.     Failing to promulgate and issue rules of the Police Manual;

      d.     Inadequately supervising the training and conduct of Defendant Police Officers;

      e.     Failing to enforce the laws of the State of Hawaii and the City and County of Honolulu;

      f.     Issuing vague, confusing, and contradictory policies concerning the use of force that are inconsistent with the requirements of the first, fourth, fifth, sixth, eighth, and fourteenth amendments of the United States Constitution.

Doc. No. 6, FAC ¶ 60.  The FAC further asserts that the County is liable for failing

to:

      a.     Appoint, promote, train, and supervise members of the Honolulu Police Department who would enforce the laws in effect in the State of Hawaii and the City and County of Honolulu and who would protect the constitutional rights of the people of the City and County of Honolulu;

      b.     Require Defendant KEALOHA, Police Chief of the Honolulu Police Department to promulgate procedures and policies for the use of force that were consistent with the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments of the Constitution; and

      c.     By permitting the policy and custom of using unreasonable force to exist and to be followed by the Honolulu Police Department.

*Id.* ¶ 61.

These conclusory allegations that the County has an impermissible

policy, custom, or practice are insufficient to establish a plausible basis for holding the County liable.  Although in the past, the Ninth Circuit "has not required parties to provide much detail at the pleading stage regarding the 'policy or custom' alleged," it has since made clear that the plausibility requirements of *Iqbal* apply with equal force to these claims.  *See Fisher v. Kealoha*, --- F. Supp. 2d ---, 2012 WL 1379320, at *6 (D. Haw. Apr. 19, 2012) (discussing Ninth Circuit jurisprudence regarding the pleading requirements for *Monell* liability); *see also AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (applying *Iqbal* standard to *Monell* claims against government officials).  The FAC does not meet the *Iqbal* standard -- it includes no factual allegations that (1) identify the particular policy, custom, or practice at issue; (2) explain how this policy, custom, or practice amounts to deliberate indifference to Plaintiff's constitutional rights; or (3) explain how the particular policy, custom, or practice was the moving force behind the constitutional violations alleged in the FAC.  *See Starr*, 652 F.3d at 1216 (stating that the pleading "must plausibly suggest an entitlement to relief, such that it is not unfair to require [Defendants] be subjected to the expense of discovery and continued litigation").  The court therefore DISMISSES the FAC's § 1983 claims against the County, with leave to amend.

## B.      Assault and Battery (Count III)

This claim as to all Officers except Officer Hottendorf fails for all the same reasons described above for Plaintiff's Fourth Amendment claim -- the FAC does not assert that any Officers other than Officer Hottendorf used any unlawful force against Plaintiff or acted with intent to harm Plaintiff. *See Mukaida v. Hawaii*, 159 F. Supp. 2d 1211, 1223 (D. Haw. 2001) (explaining the elements of claims for assault and battery). The court therefore DISMISSES the assault and battery claim as to all Officers except Officer Hottendorf, with leave to amend. Plaintiff's claim against Officer Hottendorf and the County remains.[4] *See, e.g.*, *Alexander v. City & Cnty. of Honolulu*, 545 F. Supp. 2d 1122, 1136 (D. Haw. 2008) (explaining that a plaintiff may assert state law claims against the County where malice is asserted).

## C.      Gross Negligence/Negligence (Count IV)

In order to succeed on a claim for negligence, a party must show:

> 1.      A duty, or obligation, recognized by the law, requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks;
>
> 2.      A failure on [the defendant's part] to conform to

---

[4] The County does not address the assault and battery claim in its brief. It does, however, generally argue that Plaintiff's state law claims do not specifically refer to the County such that the FAC is ambiguous and conclusory. *See* Doc. No. 11-1, County Mot. at 14. The court rejects this argument -- the assault and battery claim refers generally to "Defendants," which is sufficient to encompass the County in this claim.

the standard required;

3.        A reasonable close causal connection between the conduct and the resulting injury; [and]

4.        Actual loss or damage resulting to the interests of another.

*White v. Sabatino*, 415 F. Supp. 2d 1163, 1173 (D. Haw. 2006) (citing *Ono v. Applegate*, 62 Haw. 131, 137, 612 P.2d 533, 538 (1980)).

"In order to succeed on a claim for gross negligence a party must show 'that there has been an 'entire want of care' which raises a presumption of 'conscious indifference to consequences.'" *Smallwood v. NCsoft Corp.*, 730 F. Supp. 2d 1213, 1234 (D. Haw. 2010) (quoting *Mullaney v. Hilton Hotels Corp.*, 634 F. Supp. 2d 1130, 1154 (D. Haw. 2009)).  Gross negligence "is simply a point on a continuum of probability, and its presence depends on the particular circumstance of each case." *Royal Ins. Co. of Am. v. Sw. Marine*, 194 F.3d 1009, 1015 (9th Cir. 1999) (internal citation and quotation omitted); *Pancakes of Haw., Inc. v. Pomare Props. Corp.*, 85 Haw. 286, 293, 944 P.2d 83, 90 (Haw. App. 1997) ("The element of culpability that characterizes all negligence is in gross negligence magnified to a high degree as compared with that present in ordinary negligence." (internal citation and quotation omitted)).

The FAC asserts that the acts described previously in the FAC "constitute negligence and gross negligence."  Doc. No. 6, FAC ¶ 76.  The FAC

15

further asserts:

>   77.   Defendants, Cheung, Uehara, and Gionson were grossly negligence and/or negligent in that they supported the above described injuries to Plaintiff by failing to properly supervise and control the conduct of Defendants Nakasone, [Gaupsan, Murakami] and Hottendorf and other unknown officers.
>
>   78.   Defendants Nakasone, [Gaupsan, Murakami,] and Hottendorf  and other unknown officers were negligence [sic] and grossly negligent by their failure to adhere to department policy and by causing severe personal injury to the Plaintiff.

*Id.* ¶¶ 77-78.

These allegations, whether construed with or without all the previous allegations of the FAC, are wholly conclusory and leave unanswered the precise basis of this claim.  The FAC forces Defendants to speculate regarding (1) what duty each Defendant had to Plaintiff; (2) how each Defendant breached that duty; and (3) how that breach caused injury to Defendant.  Further, to the extent the FAC asserts that every Defendant was also grossly negligent, the FAC fails to include any facts suggesting that Defendants acted with an "'entire want of care' [that would raise] a presumption of 'conscious indifference to consequences.'" *Smallwood*, 730 F. Supp. 2d at 1234.

In sum, this claim fails -- factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is

entitled to relief.  *Iqbal*, 556 U.S. at 678; *see also McHenry v. Renne*, 84 F.3d 1172, 1180 (9th Cir. 1996) ("Something labeled a complaint but written . . ., prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint.").  The court therefore GRANTS the Motions to Dismiss Count IV as to all Defendants, with leave to amend.[5]

### D.   IIED/NIED (Count V)

A plaintiff may recover for NIED "where a reasonable [person], normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." *Doe Parents No. 1 v. State*, 100 Haw. 34, 69, 58 P.3d 545, 580 (2002) (citations and quotations omitted).  An NIED claim "is nothing more than a negligence claim in which the alleged actual injury is wholly psychic and is analyzed utilizing ordinary negligence principles." *Id*. (citations and quotations omitted).  To maintain an NIED claim, "an NIED claimant must establish, incident to his or her burden of proving actual injury (*i.e.*, the fourth element of a generic negligence claim), that someone was physically

---

[5] On all of Plaintiff's negligence-based claims, Defendants further argue that they are entitled to the conditional privilege defense.  *See* Doc. No. 11-1, County Def.'s Mot. at 17-18; Doc. No. 16, Moving Officers Mot. at 15-16.  Specifically, Defendants cite to *Bartolome v. Kashimoto*, 2009 WL 1956278, at *2 (D. Haw. June 26, 2009), for the proposition that Plaintiff can defeat a conditional privilege defense only upon a showing of malice, which is incompatible with a negligence claim.  Because the court dismisses the negligence-based claims for other reasons, the court need not address this argument at this time.

injured by the defendant's conduct, be it the plaintiff himself or herself or someone else." *Id.*

The FAC fails to allege facts that would support a plausible claim for NIED for all the same reasons described above for Plaintiff's negligence claim. Indeed, the FAC asserts in wholly summary fashion that various Defendants "negligently caused" Plaintiff's injuries and that Chief Kealoha and the County negligently "failed to properly train, supervise, and control" Defendant Officers, yet the FAC fails to provide any facts explaining these legal conclusions.[6]  Doc. No. 6, FAC ¶¶ 83-84.  And as discussed at the October 9, 2012 hearing, missing from the FAC are allegations that Plaintiff suffered any "psychic" injury.

As for Plaintiff's IIED claim, he must establish that: (1) the act that caused the harm was intentional or reckless; (2) the act was outrageous; and (3) the act caused extreme emotional distress to another.  *Young v. Allstate Ins. Co.*, 119 Haw. 403, 429, 198 P.3d 666, 692 (2008).  An IIED claim "requires conduct exceeding all bounds usually tolerated by decent society and which is of a

---

[6]  The County also correctly points out that to the extent Plaintiff bases his claim against the County on negligent supervision, Plaintiff must allege that the employees who committed the wrongful acts were acting outside the scope of their employment.  *Pulawa v. GTE Hawaiian Tel*, 112 Haw. 3, 18, 143 P.3d 1205, 1220 (2006).  "A negligent supervision claim is mutually exclusive with a claim based on respondeat superior, because the latter requires that the employee have acted *within* the scope of his employment."  *Dawkins v. City of Honolulu*, 761 F. Supp. 2d 1080, 1093 (D. Haw. 2010) (citing *Wong-Leong v. Hawaiian Indep. Refinery, Inc.*, 76 Haw. 433, 438-39, 879 P.2d 538, 543-44 (1994)).

nature especially calculated to cause, and does cause, mental distress of a very serious kind." *Hac v. Univ. of Haw.*, 102 Haw. 92, 106, 73 P.3d 46, 60 (2003) (citing *Tibke v. McDougall*, 479 N.W.2d 898, 907 (S.D. 1992)).  An outrageous act is one such that upon reading the plaintiff's complaint "average members of our community might indeed exclaim, 'Outrageous.'"  *See Young*, 119 Haw. at 429-30, 198 P.3d at 692-93.

The FAC recites that Defendant Officers "acted in an extreme and outrageous manner, intentionally and with reckless disregard for Plantiff's welfare, [and] inflicted severe and permanent emotional distress in [sic] Plaintiff."  *Id.* ¶ 82; *see also id.* ¶ 86 (stating that the Officers "acted in an intentional, malicious, wanton and willful manner with a conscious disregard for the rights of the Plaintiff").  Reading this conclusory allegation in context with the rest of the FAC, the court finds that Plaintiff states an IIED claim against Officer Hottendorf for fracturing the orbit of one of Plaintiff's eyes.  Doc. No. 6, FAC ¶ 49.  Further, because Officer Hottendorf appears to have struck Plaintiff in the scope of his employment, Plaintiff's claim against the County for IIED stands as well.  *See Molokai Veterans Caring For Veterans v. County of Maui*, 2011 WL 1637330, at *27 (D. Haw. Apr. 28, 2011).  The court can only speculate, however, as to the basis of the IIED claims against the remaining Defendants, such that the FAC fails

to state a plausible claim against the other Defendants.

The court therefore GRANTS Defendants' Motion to Dismiss as to the NIED claim as to all Defendants with leave to amend, DENIES the Motion to Dismiss the IIED claim as to Officer Hottendorf and the County, and GRANTS the Motion to Dismiss the IIED claim as to all other Defendants with leave to amend.

## V.  CONCLUSION

For the reasons stated above, the court GRANTS in part and DENIES in part the Motions to Dismiss.  Remaining in this action are Plaintiff's claims for (1) violation of his Fourth Amendment rights as to Officer Hottendorf; (2) assault and battery against Officer Hottendorf and the County; and (3) IIED against Officer Hottendorf and the County.  The court further grants Plaintiff until October 31, 2012 to file a Second Amended Complaint asserting claims for violation of Plaintiff's First Amendment rights, conspiracy to violate Plaintiff's constitutional rights, negligence, gross negligence, and NIED.  Plaintiff is also granted leave to amend his claims for violation of Plaintiff's Fourth Amendment rights, assault and battery, and IIED should Plaintiff wish to assert these claims against any additional Defendants.  Plaintiff is notified that a Second Amended Complaint will supersede the Complaint and FAC.  *Ferdik v. Bonzelet*, 963 F.2d 1258 (9th Cir. 1992); *Hal Roach Studios v. Richard Feiner & Co.,* 896 F.2d 1542, 1546 (9th Cir. 1990).

After amendment, the court will treat the Complaint and FAC as nonexistent.

*Ferdik*, 963 F.2d at 1262.  If Plaintiff fails to file a Second Amended Complaint by October 31, 2012, this action will proceed on Plaintiff's claims for violation of his Fourth Amendment rights as to Officer Hottendorf, and assault and battery and IIED against Officer Hottendorf and the County.

   IT IS SO ORDERED.

   DATED:  Honolulu, Hawaii, October 12, 2012.



    /s/ J. Michael Seabright
    J. Michael Seabright
    United States District Judge

*Costales v. City & Cnty. of Honolulu et al.*, Civ. No. 12-00171 JMS/RLP; Order (1) Granting in Part and Denying in Part Defendant City and County of Honolulu Police Department's Motion to Dismiss First Amended Complaint; and (2) Granting in Part and Denying in Part Defendants Malcolm Uehara and Terry T. Murakami's Motion to Dismiss First Amended Complaint